**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| RONALD FALLNESS, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | |
| ) | Case No. _____ |
| v. ) ) | |
| ) | JURY TRIAL DEMANDED |
| CSRA INC., LARRY PRIOR, NANCY ) KILLEFER, KEITH B. ALEXANDER, ) SANJU K. BANSAL, MICHÈLE A. ) FLOURNOY, MARK A. FRANTZ, SEAN ) O'KEEFE, MICHAEL E. VENTLING, ) BILLIE I. WILLIAMSON, CRAIG ) MARTIN, JOHN F. YOUNG, GENERAL ) DYNAMICS CORPORATION, and RED ) HAWK ENTERPRISES CORP., ) ) | CLASS ACTION |
| Defendants. ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on February 12, 2018 (the "Proposed Transaction"), pursuant to which CSRA Inc. ("CSRA" or the "Company") will be acquired by General Dynamics Corporation ("Parent") and Red Hawk Enterprises Corp. ("Merger Sub," and together with Parent, "General Dynamics").

2. On February 9, 2018, CSRA's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with General Dynamics. Pursuant to the terms of the Merger Agreement, Merger

Sub commenced a tender offer (the "Tender Offer"), currently set to expire at 11:59 p.m., New York City time, on April 2, 2018, to acquire all of CSRA's outstanding common stock for $40.75 in cash for each share of CSRA common stock. If the Tender Offer is completed, Merger Sub will be merged with and into the Company, and the Company will continue as the surviving corporation as a wholly owned subsidiary of Parent.

3. On March 5, 2018, defendants filed a Schedule 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

# PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of CSRA common stock.

9.     Defendant CSRA is a Nevada corporation and maintains its principal executive offices at 3170 Fairview Park Drive, Falls Church, Virginia 22042.  CSRA's common stock is traded on the NYSE under the ticker symbol "CSRA."  CSRA is a party to the Merger Agreement.

10.    Defendant Larry B. Prior III ("Prior") is a director, and the President and Chief Executive Officer ("CEO") of CSRA.

11.    Defendant Nancy Killefer ("Killefer") is the Chairman of the Board of CSRA.

12.    Defendant Keith B. Alexander ("Alexander") is a director of CSRA.

13.    Defendant Sanju K. Bansal ("Bansal") is a director of CSRA.

14.    Defendant Michèle A. Flournoy ("Flournoy") is a director of CSRA.

15.    Defendant Mark A. Frantz ("Frantz") is a director of CSRA.

16.    Defendant Sean O'Keefe ("O'Keefe") is a director of CSRA.

17.    Defendant Michael E. Ventling ("Ventling") is a director of CSRA.

18.    Defendant Billie I. Williamson ("Williamson") is a director of CSRA.

19.    Defendant Craig Martin ("Martin") is a director of CSRA.

20.    Defendant John F. Young ("Young") is a director of CSRA.

21.    The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

22.    Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

23.    Defendant Merger Sub is a Nevada corporation, a wholly-owned subsidiary of

Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of CSRA (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25. This action is properly maintainable as a class action.

26. The Class is so numerous that joinder of all members is impracticable. As of February 7, 2018, there were approximately 163,926,058 shares of CSRA common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the

adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

31. On November 27, 2015, CSRA became an independent, publicly traded company through consummation of a spin-off by Computer Sciences Corporation ("CSC") of its North American Public Sector business. On November 30, 2015, SRA International, Inc. ("SRA") became an indirect, wholly-owned subsidiary of CSRA. Prior to CSC's distribution of the shares of CSRA common stock to CSC stockholders, CSC undertook a series of internal transactions, following which CSRA held the businesses constituting CSC's North American Public Sector segment.

32. On November 30, 2015, CSRA completed its combination with SRA and began trading on the New York Stock Exchange under the ticker symbol "CSRA." CSRA operates as a fully integrated company via its primary operating subsidiaries, CSRA LLC and SRA International, Inc.

33. CSRA is a leading pure-play provider of information technology services to the U.S. government. The Company seeks to deliver tailored, innovative, and efficient offerings to its customers and scale to its strategic partners. As of March 31, 2017, CSRA had approximately 18,500 employees executing more than 1,000 projects.

34. On February 9, 2018, the Board caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired by General Dynamics. Pursuant to

the Merger Agreement, Merger Sub commenced the Tender Offer on March 5, 2018 to acquire all of CSRA's outstanding common stock for $40.75 in cash for each share of CSRA common stock.

35. The Tender Offer is set to expire at 11:59 p.m., New York City time, on April 2, 2018. If the Tender Offer is successfully completed, Merger Sub will be merged with and into the Company, and the Company will continue as the surviving corporation as a wholly owned subsidiary of Parent.

*The Solicitation Statement Omits Material Information, Rendering It False and Misleading*

36. On March 5, 2018, defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

37. The Solicitation Statement omits material information regarding the Proposed Transaction, which renders the Solicitation Statement false and misleading.

38. The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Evercore Group L.L.C. ("Evercore") and Macquarie Capital (USA) Inc. ("Macquarie").

39. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40. The Solicitation Statement fails to disclose certain important projections of the Company that were used by Evercore and Macquarie in their respective valuation analyses that were used to support the purported financial fairness of the Proposed Transaction. For example, in performing their respective Discounted Cash Flow Analyses, Evercore and Macquarie calculated the present value of CSRA's projected unlevered free cash flows that CSRA is expected to generate for years 2018 through 2023, but the Solicitation Statement fails disclose those unlevered free cash flow projections.

41. Further, in performing its Peer Group Trading Multiples Analysis, Evercore applied certain trading multiples to CSRA's 2018 and 2019 projections of Adjusted EBITDA less capital expenditures and adjusted earnings per share, but the Solicitation Statement fails to disclose CSRA's projections of capital expenditures and earnings per share (or earnings).

42. Additionally, the Solicitation Statement discloses the Company's projections of Adjusted EBITDA, a non-GAAP (generally accepted accounting principles) measure, but it fails to provide stockholders with the necessary line item projections of the metrics used to calculate the Adjusted EBITDA projections or otherwise reconcile the non-GAAP projections to the most comparable GAAP measure.

43. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Solicitation Statement that "[n]on-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by the Company may not

7

be comparable to similarly titled amounts used by other companies."

44. The risk of potentially misleading stockholders with the disclosure of CSRA's non-GAAP Adjusted EBITDA projections is particularly acute here because, as CSRA stated in the Solicitation Statement: "Our calculation of Adjusted EBITDA is based on our credit agreement, and may differ from other companies. Adjusted EBITDA differs from Adjusted EBITDA disclosed in the Company's reports filed with the SEC ("Reported Adjusted EBITDA") because Reported Adjusted EBITDA does not include expenses associated with stock based compensation."

45. As such, stockholders are entitled to the line item projections used to calculate CSRA's non-GAAP Adjusted EBITDA projections or a reconciliation of the non-GAAP Adjusted EBITDA projections to the most comparable GAAP measure.

46. With respect to Evercore's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) CSRA's projected unlevered free cash flows for years 2018 through 2023, as well as the line item projections thereto; (ii) the present value of the tax attributes that Evercore used in its analysis, as well as the discount rate used by Evercore to derive that present value; and (iii) the specific inputs and assumptions underlying the discount rate range of 7.5% to 9.5% calculated and applied by Evercore to CSRA's cash flows and terminal value in its analyses.

47. With respect to Evercore's Peer Group Trading Multiples Analysis, the Solicitation Statement fails to disclose CSRA's 2018 and 2019 projections of Adjusted EBITDA less capital expenditures and adjusted earnings per share.

48. With respect to Evercore's Premiums Paid Analysis, the Solicitation Statement fails to disclose: (i) the identity of the acquisitions selected by Evercore in its analysis; and (ii)

8

the individual premiums of the selected acquisitions observed by Evercore.

49. With respect to Evercore's Present Value of Research Analyst Price Targets Analysis, the Solicitation Statement fails to disclose: (i) the individual stock price targets observed by Evercore in its analysis; and (ii) the specific inputs and assumptions underlying the discount rate of 11.4% calculated and used by Evercore in its analysis.

50. With respect to Macquarie's Selected Companies Analysis, the Solicitation Statement fails to disclose: (i) the individual multiples and financial benchmarking metrics for each of the companies observed by Macquarie in its analysis; and (ii) CSRA's 2019 projections of Adjusted EBITDA less capital expenditures. Notably, although Macquarie and Evercore selected and observed the same set of companies in their respective analyses, the observed median and mean multiples of the selected companies' 2019 Adjusted EBITDA and Adjusted EBITDA less capital expenditures differ in each of Macquarie's and Evercore's analyses. As such, CSRA's stockholders are entitled to the individual multiples and financial benchmarking metrics for each of the companies observed by Macquarie so that they can assess the differences in the analyses and select the most appropriate multiples.

51. With respect to Macquarie's Selected Transactions Analysis, the Solicitation Statement fails to disclose: (i) the individual multiples and financial benchmarking metrics for each of the transactions observed by Macquarie in its analysis; and (ii) CSRA's 2017 Adjusted EBITDA less capital expenditures. Notably, Macquarie and Evercore selected and observed a different set of transactions in their respective analyses, and while the individual multiples of the transactions in Evercore's analysis are disclosed, the individual multiples in Macquarie's analysis are not. Like the Selected Companies Analysis, CSRA's stockholders are entitled to the individual multiples and financial benchmarking metrics for each of the transactions observed by

Macquarie so that they can assess the differences in the analyses and select the most appropriate multiples.

52. With respect to Macquarie's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) CSRA's projected unlevered free cash flows for years 2018 through 2023, as well as the line item projections thereto; (ii) the Company's projections of tax savings expected by Company management to be achieved as a result of the amortization of certain assets of the Company, as well as the present value of those estimated tax savings; (iii) the specific inputs and assumptions underlying the discount rates of 6.5% to 8.5% (applied to the cash flows and terminal value) and 3.68% (applied to the estimated tax savings), as calculated and used by Macquarie in its analyses; and (iv) the perpetuity growth rates implied from Macquarie's analysis.

53. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: (i) Certain Unaudited Prospective Financial Information; (ii) Opinion of Evercore; and (iii) Opinion of Macquarie Capital.

54. The Solicitation Statement omits material information relating to potential conflicts of interest of Macquarie and Evercore. Specifically, the Solicitation Statement fails to disclose information relating to each of Macquarie's and Evercore's past services provided to CSRA and General Dynamics, and the compensation earned by the bankers in connection with those services. Due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, stockholders are entitled to the full disclosure of investment banker compensation and all potential conflicts of interest.

55. With respect to Evercore, the Solicitation Statement states that, "[p]rior to this

engagement, Evercore and its affiliates provided financial advisory services to CSRA and had received fees for the rendering of these services including the reimbursement of expenses," but the Solicitation Statement fails to disclose the nature and timing of those services, as well as the compensation received by Evercore in connection with those services.

56. With respect to Macquarie, the Solicitation Statement states that "Macquarie Capital has in the past and may in the future seek to expand its business and commercial relationships with the Company, Parent, any other company that may be involved in the Offer and/or the Merger and their respective affiliates," but it fails to disclose the nature and timing of the services provided to CSRA and General Dynamics in the past, as well as the compensation received by Macquarie in connection with those services.

57. Further, the Solicitation Statement fails to disclose the reason the Board deemed it necessary to engage a second financial advisor, Macquarie, in connection with the Proposed Transaction, including whether it was due to any potential or perceived conflicts of interest on the part of Evercore.

58. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: (i) Background of the Offer and the Merger; (ii) Opinion of Evercore; and (iii) Opinion of Macquarie Capital.

59. The Solicitation Statement omits material information regarding potential conflicts of interest of the Company's executive officers and directors. Specifically, the Solicitation Statement indicates that the Company's officers and/or directors had discussions regarding pre- and post-merger benefits, but the Solicitation Statement fails to disclose any information regarding the timing or substance of those discussions and who initiated and

11

participated in the discussions.

60. First, the Solicitation Statement states:

There have been preliminary discussions between General Dynamics Information Technology and certain executive officers of the Company regarding post-closing employment arrangements and it is possible that additional members of our current management team will enter into new employment or consulting arrangements with General Dynamics or its affiliates. Such arrangements may include the right to purchase or participate in the equity of General Dynamics or its affiliates. Any such arrangements with our existing management team will not become effective until after the Merger is completed, if at all. There can be no assurance that the applicable parties will reach an agreement on any terms, or at all.

61. Second, the Solicitation Statement states that CSRA's Vice President, Controller, and Principal Accounting Officer, William Luebke, "entered into a transaction incentive agreement with the Company on January 15, 2018, which provides for a transaction bonus of $140,250 to be paid 30 days following the consummation of a transaction."

62. Further, the Solicitation Statement states that General Dynamics has agreed in the Merger Agreement to allow CSRA's officers and directors to receive bonuses and/or restricted stock units or other payments prior to the close of the Proposed Transaction.

63. The Solicitation Statement, however, fails to disclose any information regarding these discussions regarding post-closing employment arrangements and payments of pre-merger cash and/or equity awards, including when they occurred, the nature and substance of the discussions, and who initiated and participated in the discussions. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

64. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: (i) Past

Contacts, Transactions, Negotiations and Agreements; and (ii) Background of the Offer and the Merger.

65. The Solicitation Statement omits material information relating to the background leading to the Proposed Transaction. CSRA's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

66. The Solicitation Statement indicates that CSRA entered into nondisclosure agreements with two interested parties, Company A and Company B. The Solicitation Statement, however, fails to disclose the terms of the nondisclosure agreements, including whether they contain standstill and/or "don't ask, don't waive" provisions that prohibit the counterparties from making an unsolicited superior proposal to CSRA.

67. The omission of this material information renders the Background of the Offer and the Merger section of the Solicitation Statement false and misleading.

68. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to CSRA's stockholders.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

69. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

71. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein

not misleading.

72. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

73. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

74. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

75. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

76. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

77. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

78. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

79. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### (Claim for Violation of 14(d) of the 1934 Act Against Defendants)

80. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

81. Section 14(d)(4) of the 1934 Act states:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

82. Rule 14d-9(d) states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

83. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

84. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

85. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

86. Plaintiff and the Class have no adequate remedy at law.

# COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and General Dynamics)

87. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

88. The Individual Defendants and General Dynamics acted as controlling persons of CSRA within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of CSRA and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

89. Each of the Individual Defendants and General Dynamics was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

90. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

91. General Dynamics also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was

omitted and/or misrepresented in the Solicitation Statement.

92. By virtue of the foregoing, the Individual Defendants and General Dynamics violated Section 20(a) of the 1934 Act.

93. As set forth above, the Individual Defendants and General Dynamics had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

94. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

95. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for

plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: March 9, 2018          **KEMP, JONES & COULTHARD LLP**

                 By: */s/ Michael J. Gayan*
                    Michael J. Gayan
                    Wells Fargo Tower, 17th Floor
                    3800 Howard Hughes Parkway
                    Las Vegas, NV 89169
                    (702) 385-6000

                    *Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

## CERTIFICATION OF PLAINTIFF

I, Ronald Fallness ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4. Plaintiff's purchase and sale transactions in the CSRA Inc. (NYSE: CSRA) security that is the subject of this action during the class period is/are as follows:

PURCHASES

| Buy Date | Shares | Price per Share |
|---|---|---|
| 11/18/15 | 504 | $33.00 |
| | | |
| | | |
| | | |

SALES

| Sell Date | Shares | Price per Share |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

2

6. During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of March, 2018.

*[signature]*
Ronald Fallness